UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
In re                                                          :    Chapter 11
                                                               :
                                                               :
SOMS TECHNOLOGIES LLC,[1]                                      :    Case No. 18-23446 (RDD)
                                                               :
                         Debtor.                               :
---------------------------------------------------------------x

**AFFIDAVIT OF MILES FLAMENBAUM PURSUANT TO
LOCAL BANKRUPTCY RULE 1007-2 IN SUPPORT OF DEBTOR'S
CHAPTER 11 PETITION AND IN SUPPORT OF REQUESTED "FIRST DAY" RELIEF**

I, Miles Flamenbaum, being duly sworn, hereby declare as follows under penalty of perjury:

1.  I am the Vice President of Corporate Development and a member of the board of managers of SOMS Technologies LLC (the "Debtor").  I have been employed by the Debtor since 2008.  I am familiar with the Debtor's business affairs and operations, and am authorized to submit this Affidavit on the Debtor's behalf.

2.  I submit this Affidavit in support of the Debtor's petition for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), as required by Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").  Except as otherwise indicated herein, the statements in this Affidavit are based upon my personal knowledge, knowledge gained from review of relevant documents, conversations with personnel of the Debtor or my opinion based on my experience and my knowledge of the Debtor's business.

---

[1] The last four digits of the Debtor's federal Employer Identification Number are 4566.  The Debtor's principal place of business is 4 Broadway, Suite 11, Valhalla, New York 10595.

1

**I.      Overview of the Debtor's Business**

3.      The Debtor was established in 2006, and is based in Valhalla, New York and maintains an office in Albion, Illinois.  The Debtor's website is: www.microgreenfilter.com.[2]

4.      The Debtor develops and commercializes vehicle engine oil filters, offering engine oil filters for applications ranging from small four cylinder engines to medium-duty diesel engines in heavy duty vehicles, fleets, and other vehicles. The Debtor also provides private label automotive filtration products (collectively, the "Private Label Business").  The Debtor markets its Private Label Business products directly to branded automotive products companies.  The Debtor sells these products to various automakers, including Mazda and General Motors.  It also sells these products to Service Champ and to JEGS High Performance, which are branded automotive products companies, distributors and retailers.

5.      The Debtor also designs portable electric vehicle chargers (the "EV Charger Business").

6.      In addition, the Debtor sells the microGreen oil filter (the "microGreen Business"), which features a unique dual-stage design, patented technology and premium materials to achieve extended performance and filtration efficiency beyond the capabilities of traditional oil filters.  The microGreen filter allows customers to change their filter and oil much less often than would be required with traditional filters.  The microGreen filter is sold in the US and Canada through distributors, direct to fleet and to consumers through the Debtor's website.

7.      To the best of my knowledge, the Debtor does not have any secured creditors, and the Debtor does not require a cash collateral order in this case.

8.      The Debtor currently employs four employees (the "Employees").[3]

---

[2] The Debtor also has other internet domain names (somstech.com, microgreenfilter.net and somstechnologies.com).

2

II.   **Events Leading to the Commencement of This Chapter 11 Case**

9.   In the Debtor's business judgment, it was necessary to commence this chapter 11 case on the date hereof (the "Petition Date") in light of its weakening financial condition and its negative cash flow. As discussed below, in the Debtor's business judgment, it is necessary to file this chapter 11 case now, as I expect that the Debtor may otherwise soon run out of cash. As described below, the Debtor intends to sell its Private Label Business and EV Charger Business in a Section 363 sale.[4]

10.   **The Debtor's Deteriorating Cash Flow**. The Debtor lost approximately $600,000 of cash during the period from January 1, 2018 through September 17, 2018. As of September 17, 2018, the Debtor's cash balance was only approximately $119,000. I estimate that, at the current rate of its cash burn, the Debtor may run out of cash to properly operate its businesses within a few months. To help ameliorate this issue, the Debtor has paid certain of its suppliers more slowly than usual. If the Debtor were to run out of cash, I believe that a fire sale liquidation may become necessary, which would lead to value destruction and the loss of employee jobs.

11.   **The Debtor's Net Losses**. Despite the high quality of the Debtor's products and the strength of its customer relationships, the Debtor suffered significant net losses in 2017. Those losses accelerated in 2018. Specifically, the Debtor's net loss in 2017 exceeded $164,000, and its year-to-date net loss in 2018 (through September 17, 2018) has exceeded $625,000. Indeed, except for modest profits that it realized in 2014, 2015 and 2016, the Debtor suffered net losses each year since 2008.

---

[3] The Debtor had employed seven employees before the end of April 2018.
[4] After it sells these lines of business, the Debtor intends to continue operating its microGreen Business.

3

12. **Recent Loss of a Significant Customer**. The Debtor's financial condition was further weakened when it lost its single largest customer of its Private Label Business, K&N Engineering, Inc. ("K&N Engineering") in 2017. The loss of K&N Engineering as a customer dealt the Debtor a very substantial blow to its revenue and net income. Indeed, before it ceased doing business with the Debtor, K&N Engineering had accounted for over $4.3 million of revenue for the Debtor in 2016 and over $3.6 million in revenue in 2017. Without K&N Engineering as a customer, the Debtor currently is unable to operate without incurring losses, even as it has been reducing its operating expenses. The Debtor is currently involved in litigation against K&N Engineering, as described in further detail below.

13. **The Debtor's Assets and Liabilities**. The Debtor's balance sheet as of September 17, 2018 indicates that it has total assets of approximately $2.9 million. However, nearly $2.2 million of that amount is classified as "Mark to Market Recapitalization," which is an asset for accounting purposes relating to the Debtor's pre-petition equity compensation program for certain employees. Although "Mark to Market Recapitalization" is reflected as an asset on the Debtor's balance sheet, it cannot be monetized. Moreover, another approximately $285,000 of those assets are classified as "other assets," such as "organizational costs," "licenses" and "syndication costs," none of which can be readily monetized.

14. The other side of the Debtor's balance sheet reflects total liabilities of approximately $206,000 as of September 17, 2018. In addition to the foregoing liabilities, KoAir Industrial Co. Ltd. ("KoAir") and K&N Engineering each have asserted claims against the Debtor that together total over $330,000. The Debtor contests those claims.

15. **Efforts to Sell the Private Label Business and the EV Charger Business**. To address its unfavorable financial condition and its negative cash flow, the Debtor began to

4

market its Private Label Business and the EV Charger Business for sale early this year. During its time in chapter 11, the Debtor intends to sell the Private Label Business and the EV Charger Business as a going concern through a Court-supervised Section 363 sale. The Debtor recently received one formal proposal from a buyer for the Private Label Business and the EV Charger Business, and the Debtor expects to enter into a stalking horse asset purchase agreement with that potential buyer within the next few weeks.

16. The Debtor believes that selling its Private Label Business and the EV Charger Business as a going concern in bankruptcy can generate significantly more value than a disorderly liquidation that would occur if the Debtor were to run out of cash. Moreover, a going concern sale through a Section 363 sale would preserve the jobs of the Debtor's employees.

17. **The Debtor's Claims Against Third Parties**. Before the Petition Date, the Debtor commenced litigation against K&N Engineering in New York Supreme Court, Westchester County (Index No. 69618/2017), in which it asserted causes of action that included breach of contract and tortious interference with contract and business relations. The Debtor believes that it is entitled to damages from K&N Engineering of more than $1 million. Moreover, before the Petition Date, the Debtor commenced arbitration against KoAir in the International Chamber of Commerce, in which the Debtor has asserted that KoAir breached a contract between the parties. In that arbitration, the Debtor requested $1 million in damages and injunctive relief. KoAir has asserted counterclaims against the Debtor in that arbitration. During the chapter 11 case, the Debtor intends to pursue its claims against K&N Engineering, KoAir and possibly other third parties in adversary proceedings before this Court.

**III.     Relief Requested in the Debtor's "First Day" Motions**

18.     The Debtor intends to file two "first day" motions in this chapter 11 case: (a) a motion for entry of an order authorizing the debtor to (i) pay certain pre-petition compensation and reimbursable employee expenses, (ii) pay and honor employee health insurance and retirement benefits, and (iii) continue employee benefits programs, and for related relief (the "<u>Employee Obligations Motion</u>"), and (b) a motion for entry of an order extending the time for the Debtor to file its schedules of assets and liabilities, schedules of executory contracts and unexpired leases, and statement of financial affairs (collectively, the "<u>Schedules and Statements</u>") for an additional sixteen days, for a total of <u>30 days</u> from the Petition Date, without prejudice to the Debtor's ability to request a further extension upon a showing of cause (the "<u>Schedules and Statements Motion</u>").

   A.     **Employee Obligations Motion**

19.     As noted above, the Debtor currently employs four Employees. Two of the Employees (Camilla Shumaker and I) are members of the Debtor's Board of Managers.[5]  In addition, Steven Schurman, the Vice President of Sales of the Debtor, holds common profits interests in the Debtor. Mr. Schurman is not a member of the Board of Managers, does not have signature authority for the Debtor's material contracts or financial obligations, and does not make employee hiring/firing or compensation decisions on behalf of the Debtor.

20.     Each of the Employees is essential to the Debtor's continued day-to-day operations and to its efforts to sell certain of its assets in a Section 363 sale. None of the Employees are members of unions.

---

[5] Ms. Shumaker's annual salary is $150,000, my annual salary is $90,000, and Mr. Schurman's annual salary is $140,000.

21. The Employees are employed through TriNet Group, Inc. or an affiliate thereof ("TriNet"), a professional employer organization (PEO). The Debtor, as the employer, pays the gross amount of the payroll to TriNet, and thereafter TriNet remits all taxes and other deductions, either required by law, or requested by the Employee.

22. To minimize the personal hardship that the Employees will suffer if pre-petition Employee-related obligations are not paid when due, and to maintain morale and an essential workforce during this critical time, the Debtor seeks authority to pay and honor the Employee Obligations.

23. The Debtor pays the Employees in arrears on a semi-monthly basis, with direct deposits issued on the last business day of the payroll period. The Debtor's semi-monthly compensation for the Employees, including wages and salaries, taxes, and benefits is approximately $22,000.

24. The next scheduled pay date is September 28, 2018, for the payroll period of September 16 through September 30, 2018. This period includes a partial pre-petition period of September 16 through September 20, 2018. I estimate that the pre-petition portion of Employee wages and salaries, taxes, and benefits is approximately $8,340, which was not paid before the Petition Date. In addition, the Debtor requests authority to pay the pre-petition wages (in the approximate amount of $2,400) and accrued but unused paid vacation time (in the approximate amount of $1,200) for one former Employee who left the Debtor's employ very shortly before the Petition Date. The foregoing obligations are collectively defined herein as the "Unpaid Pre-Petition Compensation".

25. The Unpaid Pre-Petition Compensation includes the normal pre-petition accrued but unpaid salary of Ms. Shumaker (who is the Chief Executive Officer of the Debtor) and me.

This consists of (a) approximately $2,350 to Ms. Shumaker and (b) approximately $1,440 to me. Ms. Shumaker and I rely on our salary from the Debtor to sustain their own personal living expenses, and I believe that the Debtor cannot operate without our services. However, the Debtor is not requesting authority through the *interim* order to pay any Unpaid Pre-Petition Compensation to Ms. Shumaker or me. Rather, the Debtor requests authority only through the *final* order to pay the Unpaid Pre-Petition Compensation to these individuals.

26. No Employees are owed Unpaid Pre-Petition Compensation in an amount exceeding the $12,850 priority cap under section 507(a)(4) of the Bankruptcy Code.

27. In connection with the payment of wages, salaries and benefits to Employees, the Debtor, through TriNet, routinely deducts certain amounts from paychecks, including direct banking deposits, payments, domestic support obligations, pre- and post- tax deductions, benefit plan contributions, and insurance premiums (collectively, the "Deductions").

28. The Debtor is also required to withhold certain federal, state and local income taxes, Social Security and Medicare taxes, and other amounts from Employees' wages and salaries for remittance to the proper taxing authority, together with certain required employer contributions (*e.g.*, for Social Security and Medicare taxes and additional amounts for federal and state unemployment insurance) (collectively, the "Payroll Taxes").

29. Because of the commencement of this chapter 11 case, some funds that were deducted from Employees' earnings may not have been forwarded to the appropriate third-party recipients before the Petition Date. Accordingly, through the Employee Obligations Motion, the Debtor requests authority (including through TriNet) to forward these pre-petition Deductions to the applicable third-party recipients on a post-petition basis, as was routinely done before the Petition Date. The Debtor also requests authority to continue to honor and process its pre-

8

petition obligations with respect to the Payroll Taxes on a post- petition basis, in the ordinary course of business, as was routinely done before the Petition Date.

30.     The Debtor also requests authority to continue to forward Deductions and Payroll Taxes on a post-petition basis, whether or not related to the pre-petition period, to the applicable third-party recipients in the ordinary course of business and consistent with past practice.

31.     In the ordinary course of business, the Debtor reimburses certain Employees for travel and other miscellaneous business expenses[8] incurred on behalf of the Debtor (collectively, the "Reimbursable Expenses").  Generally, Employees pay for these Reimbursable Expenses personally, and submit requests to the Debtor for reimbursement.

32.     In some cases, Employees may not have submitted reimbursement requests in time to have been processed before the Petition Date.  Typically the Employees incur, on average, approximately $2,500 per month in Reimbursable Expenses in the aggregate.  Based on historical figures, the Debtor estimates that approximately $750 may remain outstanding on account of pre-petition Reimbursable Expenses.  The Debtor hereby requests authority to honor such obligations as they accrue, and to continue such practice in the ordinary course.

33.     In the ordinary course of its business, the Debtor maintains various employee benefit plans for its Employees. The benefits available to Employees include a medical insurance plan, a prescription plan, a dental plan, a vision plan, life insurance, accidental death and dismemberment insurance, long-term disability insurance, short-term disability insurance, statutory disability benefit programs, health care reimbursement, dependent care reimbursement, voluntary benefit plans, vacation, and other paid time off (collectively, the "Employee Benefit Plans").

34. The Debtor typically spends approximately $3,300 per month on Employee Benefit Plans. Based on this historical average, I estimate that approximately $600 of unpaid obligations have accrued on account of Employee Benefit Plans as of the Petition Date. Through the Employee Obligations Motion, the Debtor requests authority to honor and pay any pre-petition claims and obligations pertaining to the Employee Benefit Plans, and to continue the Employee Benefit Plans post-petition in the ordinary course of business and consistent with past practices.

35. The Debtor requests authority to honor and satisfy all Employee Obligations as they become due and payable on or before the 21st day after the Petition Date, other than the Unpaid Pre-Petition Compensation due to Ms. Shumaker and me. If the Debtor were not authorized to satisfy its pre-petition obligations to the other two Employees during the first twenty-one days of this chapter 11 case, those Employees may doubt that the Debtor will be able to satisfy those obligations, which could jeopardize their trust in the Debtor and lead them to consider looking for other employment. Moreover, I believe that these two Employees rely on the compensation they receive from the Debtor to pay their living expenses, and that they rely on the employee-related benefits that they receive from the Debtor.

### B. Schedules and Statements Motion

36. In the days leading up to the Petition Date, the Debtor's primary focus had been on preparing for the filing of this chapter 11 case, and the Debtor was not able to complete the Schedules and Statements by the Petition Date. Preparing the Schedules and Statements accurately and in appropriate detail will require significant attention from the Debtor's senior personnel, including me. Accordingly, through the Schedules and Statements Motion, the Debtor requests a 16-day extension of its deadline to file the Schedules and Statements.

37. During the next two weeks, however, I expect that it will be necessary to focus on transitioning the Debtor into chapter 11. Having to complete and file the Schedules and Statements within the first two weeks after the Petition Date would distract senior personnel from the Debtor's business at a critical time. Even under the extended deadline, the Debtor will file the Schedules and Statements in advance of any deadline to file proofs of claim in this chapter 11 case.

38. The Debtor will work cooperatively with the U.S. Trustee and any other necessary parties in this chapter 11 case to provide access to relevant information regarding the business and financial affairs of the Debtor.

## IV. Information Required by Local Bankruptcy Rule 1007-2

**Local Rule 1007-2(a)(1)**

39. A description of the Debtor's business and a statement of the circumstances leading to the Debtor's filing under chapter 11 are above.

**Local Rule 1007-2(a)(2)**

40. This case was not originally commenced under chapter 7 or chapter 13 of the Bankruptcy Code.

**Local Rule 1007-2(a)(3)**

41. To the best of my knowledge, no committee was organized prior to the Petition Date.

**Local Rule 1007-2(a)(4)**

42. With respect to the holders of the largest unsecured claims (excluding insiders), attached as Exhibit A are the name, address, telephone number (to the extent known), the name(s) of person(s) familiar with the Debtor's accounts, the amount of the claim, and whether

the applicable Debtor asserts that such claim is contingent, unliquidated, disputed, or partially secured.

**Local Rule 1007-2(a)(5)**

43. The Debtor does not have any secured claims.

**Local Rule 1007-2(a)(6)**

44. A copy of the Debtor's balance sheet, profit & loss statement and statement of cash flows as of September 17, 2018 is attached hereto as Exhibit B.

**Local Rule 1007-2(a)(7)**

45. The Debtor has no outstanding publicly-held securities.

**Local Rule 1007-2(a)(8)**

46. None of the Debtor's property is in the possession or custody of any custodian, public officer, mortgage, pledgee, assignee of rents or secured creditor.

**Local Rule 1007-2(a)(9)**

47. The Debtor leases premises that are located at the addresses below:

- 4 Broadway, Suite 11, Valhalla, New York 10595.
- 332A Industrial Drive, Albion, Illinois 62806.
- 12135 Sara Road, Laredo, Texas 78045.

**Local Rule 1007-2(a)(10)**

48. The Debtor's substantial assets and its books and records are located at one or more of the addresses listed above. Additionally, certain of the Debtor's machinery and equipment are located in Mexico. The assets in Mexico are held at premises operated by T&N de Mexico, which is one of the Debtor's vendors.

**Local Rule 1007-2(a)(11)**

49. The Debtor is currently party to one pending lawsuit and one pending arbitration, as described below. To the best of my knowledge, the Debtor is not a party to any proceeding in which a judgment against the Debtor or a seizure of its property is imminent.

- Before the Petition Date, the Debtor commenced litigation against K&N Engineering in New York Supreme Court, Westchester County (Index No. 69618/2017), in which it asserted causes of action that included breach of contract and tortious interference with contract and business relations. K&N Engineering moved to dismiss the complaint, asserting lack of personal jurisdiction, which the Debtor opposed. The state court has not yet ruled on K&N Engineering's motion to dismiss.

- Before the Petition Date, the Debtor commenced arbitration against KoAir in the International Chamber of Commerce. KoAir has asserted counterclaims against the Debtor in that arbitration. The Debtor was to pay a fee of $16,000 to the International Chamber of Commerce in connection with that arbitration. The Debtor has not paid that fee.

**Local Rule 1007-2(a)(12)**

50. Below are the names of the individuals who comprise the Debtor's existing senior management, their tenure with the Debtor, and a brief summary of their relevant responsibilities and experience.

- Camilla Shumaker is the Chief Executive Officer and a member of the board of managers of the Debtor. She has been employed by the Debtor since 2010. After 10 years at General Motors, and upon graduating from MIT, Shumaker was named General Manager of the Switch and Sensor Business at ITT Automotive. She went on to run the Cockpit Division for Ford Motor Company, after which she served as president for Textron Fastening Systems Automotive Solutions. She then became CEO for the Alemite Corporation, and prior to joining the Debtor, she served as president of Champion Laboratories, a business unit of United Components.

- Miles Flamenbaum is the Vice President of Corporate Development and a member of the board of managers of the Debtor. I have been employed by the Debtor since 2008. Before joining the Debtor, I was Director of Business Development and Administration at Medical Instill Technologies. I was also Director of Corporate and Business Development at Oxford Glycosciences Plc (OGS), a UK based company listed on both the London and NASDAQ

exchanges. At OGS, I was Secretary of the Executive Committee, leading merger, acquisition and integration activities.

- <u>Steven Schurman</u> is the Vice President of Sales and is <u>not</u> a member of the board of managers of the Debtor. Mr. Shurman has been employed by the Debtor since 2016. He has over 30 years of commercial sales and customer service experience. Before joining the Debtor, he held senior sales positions at ITW Pro Ap, Pacific Press Technologies, and Champion Laboratories. He has led sales efforts across automotive parts industry verticals, including original equipment, aftermarket, installer and retail markets.

**Local Rule 1007-2(b)(1)**

51. The estimated amount of payroll payments to be made by the Debtor (including for health insurance benefits) during the 30 days after the filing of the bankruptcy petition to employees <u>other than</u> Ms. Shumaker and me is approximately $22,000.

**Local Rule 1007-2(b)(2)**

52. The estimated amount of payroll payments to be made by the Debtor (including for health insurance benefits) during the 30 days after the filing of the Debtor's bankruptcy petition to Ms. Shumaker and me is approximately $24,000.

**Local Rule 1007-2(b)(3)**

53. Below is a schedule, for the 30-day period following the filing of the Debtor's bankruptcy petition, of estimated cash receipts and disbursements, net cash gain or loss, obligations and receivables expected to accrue but remain unpaid, other than professional fees.

| | |
|---|---|
| Estimated cash receipts during the 30 day period after bankruptcy filing. | Approximately $42,000 |
| Estimated cash disbursements during the 30 day period after bankruptcy filing. | Approximately $60,000 |
| Estimated net cash gain or loss during the 30 day period after bankruptcy filing. | Cash loss of approximately $18,000 (excluding professional fees) |
| Obligations and receivables expected to accrue but remain unpaid (other than professional fees) during the 30 day period after bankruptcy filing. | Receivables: Approximately $88,500<br><br>Obligations (excluding professional fees): Unable to determine at this time. |

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information and belief.

Dated: September 20, 2018

_____
Miles Flamenbaum

STATE OF NEW YORK        )
                         ) ss
COUNTY OF WESTCHESTER    )

On the  20  day of September in the year 2018 before me, the undersigned, personally appeared Miles Flamenbaum, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual executed the instrument.

_____
Notary Public

DEBRA KASHKIN
Notary Public – State of New York
NO. 01KA6171010
Qualified in Putnam County
My Commission Expires Jul 23, 2019

# EXHIBIT A

# LIST OF LARGEST UNSECURED CREDITORS

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated or disputed | Amount of unsecured claim. If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction of value of collateral or setoff | Unsecured claim |
| 1 | A.L. Solutions U.S., Inc. 133 Williams Drive Ramsey, NJ 07446 | Brian Ostrowski T: (201) 825-4235 E: bostrowski@algroup.com | Trade Debt | | | | $96,332.40 |
| 2 | T&N de Mexico Avenida Dos No. 2 Parque Industrial Cartegena Tultitlan, Edo de Mexico 54918 Mexico | Jesus Gonzalez T: 52 55 5888-1912 E: jesus.gonzalez@federalmogul.com | Trade Debt | | | | $78,311.18 |
| 3 | K&N Engineering, Inc. 1455 Citrus St. Riverside, CA 92707 | Steve Williams, Hal Collins T: 800-858-3333 E: HalC@knfilters.com | Warranty Claims | Disputed | | | $31,662.22 |
| 4 | SICANA, Inc. International Court of Arbitration of the International Chamber of Commerce 140 E. 45th Street, Suite 14C New York, NY 10017 | Mary Kay Wagner T: 646-699-5704 E: ica9@iccwbo.org | Arbitration Fee | Contingent | | | $16,000.00 |
| 5 | Harrington & Smith, Attorneys at Law, LLC 4 Research Drive Shelton, CT 06484 | Mark F. Harrington T: 203-925-9400 E: MHarrington@HSpatent.com | Professional Services | | | | $4,656.88 |
| 6 | Better Business Bureau 150 White Plains Rd., Suite 107 Tarrytown, NY 10591 | T: 914-333-0550 (x. 3) | Trade Debt | | | | $455.00 |
| 7 | Geodis Logistics, LLC 15604 Collections Center Drive Chicago, IL 60693 | Jose Serna T: 310-233-2780 E: jose.serna@geodis.com | Rent for Real Property Lease | | | | $272.40 |

17

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated or disputed | Amount of unsecured claim. If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction of value of collateral or setoff | Unsecured claim |
| 8 | Norbert M. Assion c/o Richard Assion 8 Havilland Road New Milford, CT 06776 | Norbert M. Assion T: 860-209-1420 E: n.m.assion@gmail.com | Patent License | | | | $100.85 |
| 9 | KoAir Industrial Co., Ltd. 360 Ganghwa-dongro, Bureun-myeon Gangwa-gun, Incheon 417 832 Republic of Korea | Chang Eon Oh, President T: +82-82319893276 Fax: +82-3419893279 | Litigation Claim | Contingent Unliquidated Disputed | | | Undetermined |
| 10 | | | | | | | |
| 11 | | | | | | | |
| 12 | | | | | | | |
| 13 | | | | | | | |
| 14 | | | | | | | |
| 15 | | | | | | | |
| 16 | | | | | | | |
| 17 | | | | | | | |
| 18 | | | | | | | |
| 19 | | | | | | | |
| 20 | | | | | | | |